Baltimore and Ohio Railroad Company *vs.* Brady.

(Decided 10th March, 1870.)

---

# The Baltimore and Ohio Railroad Company *vs.* John C. Brady.

## *Common Carriers— Burden of Proof— Question of Fact.*

A common carrier, by express contract with his employer, may limit his ordinary responsibility; and where indemnity from loss is claimed by virtue of such contract, the burden of proof to establish it is upon the carrier.

Certain cattle were delivered at Brady's Mills, to the Baltimore and Ohio Railroad Company, to be transported thence to Baltimore. The charge for transportation was paid in accordance with a tariff of special rates,

under which, by the printed table, the company assumed no responsibility for loss, damage or delay to stock. A portion of the cattle were killed on the route, and others were injured. An action was brought against the railroad company, by the owner of the cattle, to recover damages for their loss and injury. The railroad company claimed exemption from responsibility for the loss, upon the ground that the transportation charges were paid under the tariff of special rates. HELD :

1st. That this alone was not sufficient—it was necessary to show that the owner of the cattle had notice or actual knowledge of these terms at the time, or before the delivery of the stock by him to the railroad company for transportation, and that they were assented to by him.

2d. And that whether he had such notice or knowledge, and assented thereto, was a question of fact properly submitted to the jury.

APPEAL from the Circuit Court for Allegany County.

On the 15th of January, 1866, the appellant received at Brady's Mills, to be transported over its road to Baltimore, certain cattle, the property of the appellee. A number of the cattle were killed on the route, and others were injured. This suit was brought by the appellee to recover damages for the loss and injury. The appellant offered in evidence a printed tariff of special rates, under which it assumed no responsibility for loss, damage or delay to stock. This tariff contained the condition that the rates therein specified were to be charged only when the owner of the stock, or the party in charge of them, executed to the company a release of all liability for risks or damage to his stock or person. When no such release was executed, the charge would be made at local first class rates of the general tariff. The appellee was charged for the transportation of his cattle under the tariff of special rates, but executed no release.

*Exception:* The plaintiff offered three prayers—the Court rejected the third, and granted the first and second, which are as follows:

1st. If the jury find from the evidence that the defendant received the plaintiff's cattle, to be carried from Brady's Mills to Baltimore, over its road, and that some of the cattle were killed on the route, and others injured by an accident occur-

ring to the train on which the cattle were being conveyed, then the plaintiff is entitled to recover, notwithstanding they shall also believe that the defendant had notice, similar to that offered in evidence, in the station at Brady's Mills, and the plaintiff knew of said notice, and assisted, as owner of the cattle, in putting them on the defendant's cars; provided, they find the plaintiff did not assent to the conditions of said notice, nor execute a release thereunder.

2d. If they find the facts stated in the first prayer, the measure of damages is for the cattle killed, the market value at the place of destination at the time when they should be reasonably delivered, and for those injured, the difference between their market value at same time and place if uninjured by the accident, and what the cattle, in their damaged condition, were worth, and such additional expenses as were necessarily imposed on the plaintiff by the injuries caused by the accident.

The defendant offered eight prayers — the seventh and eighth were rejected; the fourth was granted, and the others were granted with modifications. The first and second, as modified by the Court, and the fourth, which alone it is deemed proper to set out, were as follows:

1st. If the jury shall believe, from the evidence in the cause, that the plaintiff, on or about the 15th of January, 1866, in the absence of his father, who was the local agent of the defendant at that point, shipped thirty-two head of cattle from a station on the road of the defendant, called Brady's Mills, by the road of the defendant for Baltimore, and if the jury shall find, from the evidence, that the plaintiff is the son of the agent of the defendant at that point, and that the plaintiff shipped the said cattle as his own, and being his own, if the jury shall so find, in the absence of his father, and if the jury shall further find that the plaintiff shipped or carried his cattle under the tariff of special rates offered in evidence by the defendant, and that the said tariff of special rates was posted in the depot of the said defendant, and were known to

the plaintiff, and .if the jury shall further find that the said " special rates " contained the provision that " the above rates to be charged only when the owner of the stock or the party in charge of them, executes to the company a release of all liability for risks or damages to his stock or person; when no such release is executed, the charge will be made at local first-class rates of the general tariff;" and if the jury shall further find that the plaintiff did not pay a higher rate than the special rates in the said tariff of special rates; then, that the plaintiff is just as much bound by said special rates as though he had, at the time of shipping or carrying said stock, signed the said release, and is not entitled to recover in this case, unless the jury shall further find that the injury to said cattle arose from the gross negligence or default of the agents or officers of said company, acting in discharge of their several official duties, or from defects in the rolling machinery of said road, or in its track, which, by the use of the ordinary care, diligence and circumspection usual on railroads, the defendant might have guarded against; and provided that the jury shall further·find, from the evidence, that the said cattle were shipped as hereinbefore set forth, and that the plaintiff assented to the conditions set out in said special rates.

2d. If the jury shall find, from the evidence in the cause, the facts stated in the first prayer of the defendant, which are made part of this, and shall further find that the defendant had two tariffs of rates for cattle and freight transported over its road, one called "local first-class rates of the general tariff," the other called "local live-stock tariff, special rates;" that both of the tariffs and their rates were known to the plaintiff at the time he shipped or carred his said cattle, and if the jury shall further find that, at the time said cattle were shipped or carred by said plaintiff, that Samuel D. Brady, the father of said plaintiff, was the agent of the defendant at that point, and that, at the time of shipping or carring the said cattle, the plaintiff was present when the cattle were shipped, in the absence of his father; and if the jury shall find that the plain-

tiff shipped his said cattle under the tariff of " local live stock tariff of special rates," but failed to execute a release such as described in said tariff of special rates, and did not notify the said company that he had failed to execute the release before the injury to said cattle, then the plaintiff is not entitled to recover in this action for the matters claimed in the declaration, unless the jury shall further find that the damage and injury to said cattle arose from the gross negligence or default of the agents or officers of the said company, acting in the discharge of their several official duties, or from defects in the rolling machinery of said road or in its track, which, by the use of the ordinary care, diligence and circumspection usual on said roads, the defendant might have guarded against, and provided the jury shall further find from the evidence that the said cattle were shipped as hereinbefore set forth, and that the plaintiff assented to the conditions set out in said special rates.

4th. That if the jury shall find from the evidence the facts stated in the first and second prayers of the defendant to be true, and shall further find from the evidence that the cars or vehicles of the defendant used in transporting the cattle of the plaintiff, were in good and safe condition of repair, and that the road of the defendant, from the station at Brady's Mill to Baltimore, was in a good and ordinary condition of repair at the time the cattle were so transported, and the place where the accident happened and injury to the cattle occurred, and that the plaintiff assumed to act, and did act, and assisted in shipping the cattle of the plaintiff at Brady's Mills station or depot, and shall further find that the plaintiff, as owner, was informed and knew of the existence of the said general and special rates of tariff of prices for transporting cattle on the defendant's road, and that the plaintiff did ship said cattle at the said station, at said special or lower rates of prices of transportation, and only paid such lower or special rates to the defendant in consideration of carrying or engaging to carry or transport the cattle of the plaintiff to Baltimore, then the

plaintiff shall be regarded as having assumed upon himself the risk or damage of carrying or transporting said cattle to Baltimore, and cannot recover in this action damages for any injury that did occur to the said cattle, in their transportation to Baltimore, unless the jury shall further find from the evidence that the cars or vehicles of the defendant were insufficient and unsafe, and its road was not in safe condition of repair at the place where, and at the time when the alleged injury to said cattle occurred, or that the alleged injury to said cattle was caused by the gross negligence of the defendant or its servants.

To the ruling of the Court in granting the first and second prayers of the plaintiff, and rejecting its seventh and eighth, and to the modifications of its first, second, third, fifth and sixth prayers, the defendant excepted, and the verdict and judgment being for the plaintiff, it appealed.

The cause was argued before BARTOL, C. J., STEWART, BRENT, MILLER and ALVEY, J.

Thomas J. McKaig, for the appellant.

William Walsh, for the appellee.

BRENT, J., delivered the opinion of the Court.

There is no doubt that a common carrier, by an express contract with his employer, may limit his ordinary responsibilities. Where indemnity from loss is claimed by virtue of such a contract, the burden of proof to establish it is upon the carrier.

In this case, a special contract was attempted to be set up by showing, that the appellee paid for the transportation of his stock at a tariff of charges under which, by the printed table, the company assumed no responsibility for loss, damage or delay of stock. This alone was not sufficient. It was necessary to show that the owner of the cattle had notice or actual knowledge of these terms at the time or before the

delivery of the stock by him to the company, to be transported, and that they were assented to on his part. 2 *Redfield on R. W.*, 80. This was the only question in the case. It was one of fact for the jury upon all the evidence, and was properly submitted to them.

There was no written contract offered which the Court was called upon to construe, and although the appellee may have paid the special rates, it does not follow, as a conclusion of law, that he had notice of the terms upon which they were charged, or that he assented to the same. The weight of testimony is against any such conclusion. The evidence offered by the company shows that really no contract was entered into by the appellee to limit their responsibility as a common carrier. Where the special rates were accepted, releases were to be given. In this case, no release was given by the owner of the cattle, and according to the company's own terms, a contract was never consummated between the parties. Their own evidence also rebuts the presumption of any contract growing out of the charge of the special rates. The cattle were placed on the cars at Brady's Mills, and the charges made for their transportation were fixed at the company's office in Baltimore city, after the accident and loss occurred, upon which this action is founded.

In looking at the whole case, the appellant has nothing to complain of in the instructions and prayers which were granted by the Court below. The prayers of the appellee, which were granted, properly state the law of the case. And in the fourth prayer of the appellant, the case is most favorably submitted to the jury upon the law, and the whole question of the existence of any special contract left to be passed upon by them on the whole evidence in the case.

Seeing no error in the rulings of the Court below, the judgment will be affirmed.

*Judgment affirmed.*

(Decided 10th March, 1870.)